Katz *v.* Montague, Appellant.

Argued November 12, 1954. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and AR-NOLD, JJ.

*J. Webster Jones,* for appellant.

*Stanley M. Greenberg,* with him *Bernard S. Och-man,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, January 7, 1955:

On February 25, 1952, in Philadelphia, the plaintiff Betty Katz was a passenger in an automobile being operated by Abraham Keller on Norris Street in a westwardly direction. The defendant Earlie Montague

was driving a car in a southwardly direction on 25th Street which intersects Norris Street. In these modern times when car meets car at an intersection, a legal tug of war follows in some court of the Commonwealth. Betty Katz thus sued Earlie Montague for the injuries she sustained when the Keller car and the Montague car collided with each other at 25th and Norris Streets. Upon being made a defendant, Montague brought in Abraham Keller as an additional defendant. To complicate the story but not the law, Betty Katz married the additional defendant Keller, so that she found herself suing her own husband, together with Earlie Montague. The jury returned a verdict in favor of Mrs. Keller against her husband but exonerated Montague. Keller asked for a judgment n.o.v. against his wife, and his wife asked for a new trial against her husband and against Montague, asserting doubly that the verdict was inadequate and that it was against the weight of the evidence. The lower court granted the plaintiff's motion for a new trial on the ground that the verdict was against the weight of the evidence, denied Keller's motion for judgment n.o.v. and then later awarded Keller a new trial.

Despite the marital involvement and interlacing network of post-trial motions, only one question presents itself before this Court, and it is this: Was the lower court in error in ordering a new trial? In *Bellettiere v. Philadelphia,* 367 Pa. 638, we said that " 'whenever the reason or reasons assigned involve the exercise of discretion, the order of the trial court will not be interfered with unless a palpable abuse of power appears.' " A study of the record here certainly negatives any assumption that the lower court palpably abused its power. We also said in the *Bellettiere* case that: " 'One of the least assailable grounds for the exer-

cise of such power [to grant a new trial] is the trial court's conclusion that the verdict was against the weight of the evidence and that the interests of justice therefore require that a new trial be awarded; especially in such a case is an appellate court reluctant to interfere.' "

With those criteria before us, we see no reason for interfering with the decision of the Trial Court that justice requires the factual issues in this case be tried before another jury. The evidence would easily suggest that Montague was not without fault in the accident which visited serious injuries on Betty Katz. Montague testified that as he proceeded southwardly on 25th Street and across Norris Street, he looked to his left (which is the direction in which the Keller car was proceeding), but that he did not see the Keller car because a truck moving northwardly on 25th Street concealed the Keller car from his view. He then said that as the intervening truck passed, the Keller car appeared before him at a distance of only 6 feet and that he then crashed into the right side of the Keller car. This testimony would justify any jury in convicting Montague of negligence out of his own mouth. The object of requiring a motorist to look to his left and right as he enters and proceeds through an intersection is to *see* what may be moving into his path.* One

---

* In *Stevens v. Allcutt*, 320 Pa. 585, this Court affirmed a judgment n.o.v. because the plaintiff had said that as he went into the intersection he "looked in a more or less general way to both sides." Mr. Justice SCHAFFER, speaking for the Court, said: "This sort of looking does not fulfill the requirement of the law. The statement indicates that the looking was vague, not careful, attentive or searching a mere cursory glance, not calculated to bring home knowledge of the traffic conditions in the intersection, as is shown by the fact that plaintiff when about two-thirds across drove directly into the path of the truck which he did not see until it struck him."

does not meet the requirement of the law by looking and then advancing in spite of the fact that his glance encounters a barrier which shuts off the view of what may be before him. If the truck had been a smoke screen, Montague could not be heard to say that he satisfied the requirement of looking. Looking includes seeing, not merely directing one's eyes in a certain direction. When the truck cut off Montague's perspective, it was his duty to stop or proceed at such a snail's pace that he could stop in a gasp, should something appear from behind the truck.

In a statement given to a police officer after the accident, Montague said that he proceeded through the intersection at 20 miles per hour, which, in view of the curtaining concealment presented by the truck, was obviously a speed not in keeping with the due care called for by the circumstances.

At another point in his testimony Montague stated that he stopped at the intersection and looked to his left but he did not see the Keller car. Since the Keller car was obviously there, Montague either did not look or closed the eyes of caution to what he saw. In either event his words bespoke a negligence which the lower court felt it could not ignore.

The order of the court below ordering a new trial in favor of the plaintiff and the additional defendant is affirmed.

---

DISSENTING OPINION BY MR. JUSTICE BELL:

The jury returned a verdict for defendant Montague and a verdict for plaintiff against the additional defendant Keller.

The only evidence in the case was that produced by plaintiff. No matter which witness for plaintiff is believed or whether all witnesses for plaintiff are be-

lieved, the negligence of the additional defendant was gross and was far greater than the negligence, if any— and I agree with the jury that there was none—of the defendant Montague.

A trial Judge or lower Court has an inherent right to grant a new trial when he is convinced that the verdict is against the weight of the evidence and in such cases an appellate Court will reverse only for a manifest abuse of discretion.

The trial Judge in granting a new trial as to Montague stated: "Montague's car was proceeding *South on 25th Street*. Montague stated that he stopped at the intersection and then proceeded to cross after having looked to his left, the direction in which defendant Keller's car was proceeding. He said that he did not see the Keller car when he looked, the reason being that it had been obscured by a truck proceeding *North on 25th Street* * and that the plaintiff's car came from behind the truck [down Norris Street] and collided with defendant's car. It is the opinion of the court that Montague's testimony convicted him of negligence and that therefore the verdict was against the evidence and against the weight of the evidence and a new trial should be granted the plaintiff as to Montague."

The trial Judge neglected to say (1) that Montague's car was three-quarters of the way across 25th Street when it collided with plaintiff's car which came suddenly and without any warning from behind the truck, and (2) that Montague not only stopped at the intersection, but Montague had the right of way. Moreover, the driver of an automobile cannot be held guilty of negligence as a matter of law because he entered an intersection when his view to the left was obstructed by a vehicle traveling on the same street. Cf. *Pelle-*

---

* Italics ours.

*grini v. Coll,* 133 Pa. Superior Ct. 294, 2 A. 2d 491; *Rea v. Pittsburgh Railways Company,* 344 Pa. 421, 25 A. 2d 730; *McGavern v. Pittsburgh Railways Company,* 378 Pa. 13, 105 A. 2d 342; *Borisoff v. Penn Fruit Company, Inc.,* 165 Pa. Superior Ct. 572, 69 A. 2d 167; *Myers v. Funk,* 111 Pa. Superior Ct. 17, 169 A. 400. Furthermore, if a car which stops at a street intersection has to wait until all the parallel traffic which is going in the opposite direction on the same street passes by, traffic in cities and on popular rural highways will be *paralyzed.*

The trial Judge's statement that because he believed Montague's testimony convicted him of negligence the verdict was therefore against the weight of the evidence is a non sequitur and actually is contrary not only to the weight, but in my judgment contrary to all the evidence in the case.

This Court has many times said, as Chief Justice STERN said in *Carroll v. Pittsburgh,* 368 Pa. 436, 84 A. 2d 505: "A new trial should not be granted because of a mere conflict in testimony or because the trial judge on the same facts would have arrived at a different conclusion: Wilson v. Kallenbach, 332 Pa. 253, 255, 256, 2 A. 2d 727, 728. Neither should it ordinarily be granted on the ground that the verdict was against the weight of the evidence where the evidence is conflicting and the jury might have found for either party." This guiding principle was iterated and repeatedly reiterated by this Court: See, inter alia, *Jones v. Williams,* 358 Pa. 559, 58 A. 2d 57; *Decker v. Kulesza,* 369 Pa. 259, 85 A. 2d 413; *Devlin v. Piechoski,* 374 Pa. 639, 99 A. 2d 346; *Martin v. Arnold,* 366 Pa. 128, 77 A. 2d 99; *Stewart v. Ray,* 366 Pa. 134, 76 A. 2d 628.

This Court rarely ever reverses the action of the lower Court when it grants a new trial on the ground

that the verdict was against the weight of the evidence,* but we have done so whenever we believed the lower Court committed a palpable abuse of discretion: *Jones v. Williams,* 358 Pa., supra; *Decker v. Kulesza,* 369 Pa., supra; *Martin v. Arnold,* 366 Pa., supra; *Stewart v. Ray,* 366 Pa., supra.

If there ever was a manifest abuse of discretion in a negligence case, this, in my judgment, is it. I would therefore sustain the verdict of the jury and reverse the order granting a new trial as to defendant Montague.

---

DISSENTING OPINION BY MR. JUSTICE CHIDSEY:

I am obliged to dissent for I am of the opinion that the lower court clearly erred in setting aside the verdict of the jury. The reason assigned for the grant of a new trial appears in the following portion of the lower court's opinion: ". . . Montague stated that he stopped at the intersection and then proceeded to cross after having looked to his left, the direction in which defendant Keller's car was proceeding. He said that he did not see the Keller car when he looked, the reason being that it had been obscured by a truck proceeding North on 25th Street and that the plaintiff's car came from behind the truck and collided with defendant's car. It is the opinion of the court that Montague's testimony convicted him of negligence and that therefore the verdict was against the evidence and against the weight of the evidence and a new trial should be

---

* More than any Judge on this Court I have favored *sustaining* the grant of a new trial by a trial Judge whenever the reason alleged was that it was in the interest of justice or that the verdict was against the weight of the evidence. See, for example, my concurring opinion in *Bellettiere v. Philadelphia,* 367 Pa. 638, 81 A. 2d 857.

granted the plaintiff as to Montague.". It thus appears that the court found Montague guilty of negligence as a matter of law. Before such a conclusion could be reached, Montague was entitled to have the testimony considered in the light most favorable to him, especially in view of the jury's verdict in his favor. See *Satterwhite v. National Powder Company*, 362 Pa. 133, 66 A. 2d 278. Thus considered, when Montague proceeded to cross the intersection, the truck travelling in the opposite direction on 25th Street not only obscured his view but constituted a barrier against vehicles travelling west on the north side of Norris Street. Under these circumstances Montague was not required to wait until the truck cleared his car. The duty imposed upon the driver of a motor vehicle is care under the circumstances. Upon entering an intersection he must look for vehicles approaching from the left that might cross his path. However, if another vehicle or vehicles travelling parallel with his course make it impossible for cars approaching from his left to cross his path, the law is not so unreasonable as to require him to remain stationary and stop the movement of other automobiles in his lane of travel. In *Rea v. Pittsburgh Railways Company*, 344 Pa. 421, 25 A. 2d 730, Mr. Justice DREW stated: "It is well-settled that 'The law only makes obligatory the rule of common sense regarding the duty of a driver at the intersection of streets, where traffic is very dangerous because conflicting. . .' ". It has been repeatedly held that the driver of an automobile may not be declared negligent as a matter of law because he entered an intersection when his view to the left is obstructed by a vehicle travelling on the same street. See *Myers v. Funk*, 111 Pa. Superior Ct. 17, 169 A. 400; *Pellegrini v. Coll*, 133 Pa. Superior Ct. 294, 2 A. 2d 491; *Borisoff v. Penn Fruit Company, Inc.*, 165 Pa. Superior Ct. 572, 69 A.

2d 167; *Rea v. Pittsburgh Railways Company,* supra; *McGavern v. Pittsburgh Railways Company,* 378 Pa. 13, 105 A. 2d 342. Of course the driver must be vigilant and continue across the intersection cautiously. Whether or not the driver was negligent depends upon the circumstances of each case and is a matter for the jury.

Montague testified that he proceeded across the intersection in low gear from 5 to 8 miles an hour, that when the front of his car got past the truck and was three-quarters of the way across Norris Street, he saw Keller's car when it was 6 feet away from him, coming from the rear of the truck. This placed Keller's car which was travelling west, on the eastbound lane of Norris Street and therefore on his wrong lane of travel. The two vehicles collided and together struck a pole at the southwest corner of the intersection. It was undisputed that the accident happened in the southwest quadrant of the intersection. When Montague reached the middle of the street he was of course obliged to look for traffic that might be approaching from his right. A motor vehicle driver is not under a duty to continue to keep his attention directed to his left, when crossing a two-way street, after he has passed the traffic lane in which vehicles coming from his left belong: *Randich v. Arena & Sons, Inc.,* 156 Pa. Superior Ct. 99, 39 A. 2d 458. The testimony of Keller and his passenger (the plaintiff) shows that neither of them saw Montague's car until it was 10 feet away in its proper lane of travel. Keller testified that he did not notice any truck travelling north on 25th Street but he admitted that after the accident he made a statement to the police in which he said: ". . . I didn't notice any truck traveling north before I entered the intersection. There might have been, I cannot say for sure. I thought it was clear to go across. I don't

know why I didn't see this other car in time.". He testified that he had been travelling on the north side of Norris Street. It is obvious that he would not have crossed to the south side of the street unless because of the presence of the truck he changed his course to avoid and pass around it.

Montague did not testify in defense, all of his testimony having been adduced after being called by the plaintiff. The trial judge expressly instructed the jury that the testimony of the plaintiff and of Keller did not permit any inference of negligence on the part of Montague. In plaintiff's brief it is admitted that Montague was the only witness in a position to testify to the operation of his car prior to and at the time of the occurrence. Neither plaintiff nor Keller took any exception to the charge of the court or the above instructions. Whether Montague was negligent in the operation of his car depended on his own testimony. The court below expressed no disbelief of Montague's testimony. It accepted his testimony in its erroneous ruling that he was guilty of negligence as a matter of law. Because of its ruling in this regard it concluded that ". . . *therefore* the verdict was against the evidence and against the weight of the evidence . . .". (Emphasis supplied).

The question whether Montague was negligent was clearly for the jury and their verdict placing sole responsibility for the accident upon Keller is supported by the overwhelming weight of the evidence.

Plaintiff assigned as reasons in support of her motion for new trial, that the verdict was against the law, the evidence, the weight of the evidence and was inadequate. The court held the verdict to be adequate, refused a new trial as to Keller, but awarded a new trial for the reason above stated as to Montague. After the present appeal was taken by Montague, the court

below also granted a new trial as to Keller, stating in a short memorandum opinion: "In order to prevent the possibility of there arising two judgments from the one injury wherein a satisfaction of either would act as a release of the other, the court awarded the plaintiff a new trial against the additional defendant Keller in addition to the new trial previously granted her against the defendant Montague.".

The record in this case discloses a clear abuse of discretion on the part of the lower court. The verdict of the jury should not be disturbed and the orders granting a new trial should be reversed.

Mr. Justice JONES joins in this dissenting opinion.